406 A.2d 1020

INTERSTATE TRAVELLER SERVICES, INC. a/k/a Tri-County Oil Company, Inc., the Township of Boggs and Boggs Township Authority, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES and Mid-Centre County Authority, Appellees.

Supreme Court of Pennsylvania.

Argued May 22, 1979.

Decided Oct. 1, 1979.

538

Ronald M. Katzman, Harrisburg, for appellant Interstate Traveller Services, Inc., etc.

David A. Flood, Bellefonte, for appellant Tp. of Boggs, etc.

John P. Krill, Jr., Asst. Atty. Gen., Harrisburg, for Dept. of Environmental Resources.

Robert Moore, Harrisburg, for Mid-Centre County Authority.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM.

The Court being equally divided, the order is affirmed.

LARSEN, J., filed an opinion in support of affirmance in which EAGEN, C. J., and O'BRIEN, J., join.

MANDERINO, J., filed an opinion in support of reversal in which ROBERTS and NIX, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

On January 17, 1977, appellants, Interstate Traveller Services (ITS), Township of Boggs (township) and Boggs Township Authority (township authority) filed a complaint in

equity in the Commonwealth Court seeking, *inter alia,* to enjoin appellees, the Department of Environmental Resources (DER) and the Mid-Centre County Authority (regional authority) from compelling the township to participate in the construction of a regional sewage facility. The complaint alleged that appellees were conspiring to interfere with contractual rights of appellants and were engaged in a course of conduct calculated to harass, threaten and coerce appellants into a breach of the contract entered into among themselves and DER.

Appellees filed preliminary objections to the complaint, one of which was that appellants had failed to exercise or exhaust statutory remedies existing at law and were therefore precluded from seeking redress of their alleged injuries through a complaint in equity. Commonwealth Court agreed and dismissed the suit. That court found the gravamen of the complaint was that appellants had been aggrieved by two official actions of DER, namely: (1) an order issued on October 12, 1973 compelling the township and other local governmental bodies in the area to negotiate and enter into agreements to provide for a regional sewage system, and (2) a permit issued by DER to the regional authority authorizing construction of a regional facility. The Commonwealth Court ruled that it had no jurisdiction to entertain the suit since appellants did not appeal to the Environmental Hearing Board (EHB) from said order and permit [1]; thus, they failed to exhaust their statutory remedies. I agree, and would affirm the dismissal.

For the purpose of determining whether the lower court properly sustained DER's preliminary objections, the reviewing court must assume the truth of the facts averred in the petition for review. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). Moreover, a case should be dismissed on preliminary objections only where the dismissal

---

1. The right to appeal an order, permit, license or decision of DER to the Environmental Hearing Board is granted by Section 1921–A of the Administrative Code of 1929, Act of April 9, 1929, P.L.177, *as amended,* 71 P.S. § 510–21 (Supp.1979–80). *See* text of 71 P.S. § 510–21 in text of this opinion, *infra.*

is clearly warranted and free from doubt. *Baker v. Brennan*, 419 Pa. 222, 213 A.2d 362 (1965). The facts as summarized from the petition for review are as follows:

Some time prior to October 10, 1973, appellant ITS filed an application with DER for a permit to construct a sewer plant to service certain enterprises in the area of the Exit Interchange of Route 80 in Centre County. DER insisted that any sewer treatment facility erected in the area should be under the control and supervision of Boggs Township. Thus, the township became involved in the negotiations.

On October 10, 1973, ITS, DER and the township entered into an agreement which provided that ITS would construct a sewer plant according to the plans and specifications approved by DER and the township.[2] The agreement also provided that, upon completion, the plant be conveyed by ITS to the township or a newly created township authority. On October 16, 1973, DER issued a permit to ITS allowing construction of the local facility to begin. Pursuant to the terms of the written agreement, ITS conveyed the completed facility to the township authority on October 7, 1975, subject to the payment of a $250,000 note. The township authority then leased the facility to the township. As required by the written agreement, the township adopted the necessary enabling ordinances imposing user charges and making mandatory connection to the sewage collection system of all properties within the required distances.

On October 12, 1973, DER issued an order requiring the township and other area municipalities to participate in

2. Paragraph 9 of the complaint in equity appears as follows:
"9. Interstate, the developer of said facility, made application and signed agreements for a 125,000 gallon plant only after engaging in fruitless attempts with DER to allow a smaller plant, and only after DER assured plaintiffs that DER could and would force other industries and prospective users at the said interchange to connect to the Township sewage plant, which DER has refused and failed to do."

regional sewage planning.[3]   Thereafter, in 1975 or 1976, DER issued a permit to the regional authority approving construction of a regional sewage facility.[4]   After this permit was issued, the regional authority decided to change the location of the regional facility to a site which is less than one mile from the ITS facility.   Appellants argue that the effect of constructing a sewage facility at this location would be to render the ITS facility and its lines useless.

I have carefully analyzed appellant's complaint in equity and am convinced, as was the Commonwealth Court, that the gist of the conduct complained of was official DER actions conducted pursuant to its statutory authority.[5]   Although the complaint speaks in terms of harassment, coercion and interference with contractual rights, it is clear from the complaint that DER (and the regional authority) exer-

---

**3.** This order was issued pursuant to authority vested in DER under the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. § 691.1, et seq.;  and the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535, *as amended*, 35 P.S. § 750.1 et seq.

**4.** The complaint specifically refers to the permit, which was not made part of the record in this case, but does not specify the date upon which it was entered.   Appellant's brief, however, states that it was issued in 1975.   Brief for Appellant at 43.

**5.** Commonwealth Court states the two (2) official DER actions which should have been appealed to the EHB were the October 12, 1973 order and the permit issued to the regional authority.   Since the order did not on its face appear to aggrieve appellants, and since the permit has not been made part of the record, I do not necessarily agree that these two events alone established that appellants were adversely affected so as to trigger their rights to appeal to the EHB.

However, it is apparent from the complaint as a whole and exhibits attached thereto that the appellants knew well before January 19, 1977 (the date on which the complaint was filed) that they were adversely affected (if the allegations are true) by DER decisions.   For example, a letter written by DER to ITS on May 2, 1975 informs ITS that, contrary to the promises of the alleged agreement, DER would not require area enterprises to use the ITS facility.   Similarly, a letter by the township on September 30, 1974 also notes DER's refusal to "live up to its agreement."   Further, DER had already commenced a contempt proceeding to compel the township and township authority to join in the implementation of the regional sewage system.   By November 5, 1975, the ITS facility had already been rejected by the regional authority for use in the regional system.

cised administrative judgment that was allegedly injurious to appellants, and it is this judgment which is being collaterally challenged by means of the complaint in equity. Whether or not DER's authority was exercised improperly is a matter that could have and should have been heard by the EHB, the body with the requisite administrative expertise to competently resolve the matter in the first instance.

The Administrative Code of 1929, *as amended* (*see* note 2, *supra*) provides, in relevant part:

(a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications . . . . on any order, permit, license or decision of the Department of Environmental Resources.

. . . . .

(c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; *provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.* 71 P.S. § 510–21(a) and (c) (emphasis added).

Since appellants' complaint demonstrates that the appellants were adversely affected by DER orders, permits and/or decisions, *see* note 5, *supra*, their failure to exhaust the appeal provisions of 71 P.S. § 510–21 renders their collateral attack via the complaint in equity invalid.

This Court stated in *Erie Human Relations Commission ex rel. Dunson v. Erie Insurance Exchange*, 465 Pa. 240, 245, 348 A.2d 742, 744 (1976) "it is well settled that 'where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress.' (citations omitted). This is *par-*

*ticularly true of special statutory appeals from the action of administrative bodies."* (citations omitted—emphasis added). *See also Commonwealth v. Derry Township,* 466 Pa. 31, 351 A.2d 606 (1976) (failure to appeal to EHB from a DER order requiring township participation in regional planning rendered that order final and foreclosed any attack on its validity or content in the enforcement proceeding) *and Commonwealth Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.,* 473 Pa. 432, 375 A.2d 320 (1977) (failure to appeal to EHB from a DER order granting a variance until a given date rendered that order final and foreclosed any attack on its validity or content in the enforcement proceeding).

In *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976), plaintiffs had filed a class action complaint in equity against the Commonwealth and the Secretary of Revenue seeking to compel the refunding of allegedly overpaid sales taxes on automobiles. Justice Pomeroy, noting that a statutory procedure existed for the refunding of improperly assessed or improperly paid sales taxes, stated for this Court "[w]here such an administrative remedy is statutorily prescribed the general rule is that a court—be it a court of equity or a court of law—is without jurisdiction to entertain the action. (citations omitted). Strict compliance with the statutory procedure thus established is the norm. Statutory Construction Act of 1972, Act of December 6, 1972, P.L.1339, No. 290, 1 Pa.C.S. § 1504." (Further citations omitted).[6] Id., 467 Pa. at 18, 19, 354 A.2d at 252.

■ For the foregoing reasons, since appellants failed to exercise their statutory right to appeal to the EHB, the Commonwealth Court acted properly in dismissing appel-

6. 1 Pa.C.S. § 1504 provides: "in all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect."

lants' complaint on the grounds of failure to exhaust administrative remedies.[7]   Accordingly, the order is affirmed.

EAGEN, C. J., and O'BRIEN, J., join in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

The Department of Environmental Resources (DER) has not issued an order, permit or decision which Interstate Traveller Services (ITS) could have appealed to the Environmental Hearing Board (EHB).   It is therefore folly to dismiss the complaint of ITS on the basis that they failed to exhaust administrative remedies by not first appealing to EHB.

The order which DER did issue, on October 12, 1973, occurred two days after DER and ITS entered into an agreement on October 10, 1973.   The order did not on its face indicate any interference with the ITS agreement.   ITS was not a party to the October 12, 1973 order nor was it given any notice of it.   Preliminary objections should not be upheld because of failure to appeal such an order.

The opinion in support of affirmance states that the other official action by DER which mandated the taking of an appeal to EHB was the issuing of a permit.   This permit was not made part of the record.   Since the permit was not disclosed in the record, it cannot be used to support preliminary objections.

**7.** Appellant ITS raises the argument that its standing to appeal the DER action is not free from doubt, and that, therefore, they cannot be held accountable for failure to exhaust administrative remedies which they were unsure, for standing reasons, whether or not they had.   This argument is merely a smokescreen.   If they were injured at all by the conduct of DER (and, from the complaint, it is difficult to perceive what injury ITS could have incurred since they conveyed their interest in the local sewage facility to the township for payment in full), then that injury was fully cognizable in the administrative hearing.   They would have been a party "adversely affected" and "aggrieved" by the agency action under numerous decisions of this Court.   *See, e. g. Louden Hill Farm, Inc. v. Milk Control Commission,* 420 Pa. 548, 217 A.2d 735 (1966) and cases cited therein.

Finally, the opinion in support of affirmance states that since ITS knew of adverse DER decisions it should have appealed these to EHB. However, these "decisions" were not of the nature which generally constitute "reviewable decisions." In fact, it is these very "decisions" which form the underlying basis for appellant's original complaint—harassment, coercion, and interference with contractual rights. Appellees preliminary objections should be dismissed and ITS should be permitted to have a determination on the merits.

ROBERTS and NIX, JJ., join in this Opinion in Support of Reversal.